# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RENA THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-773-W |
| | ) |
| CRUSH ENTERPRISES, INC. d/b/a | ) |
| JAN-PRO CLEANING SYSTEMS; | ) |
| | ) |
| and | ) |
| | ) |
| SOUTHWEST AMBULATORY SURGERY | ) |
| CENTER, LLC d/b/a OKLAHOMA CENTER | ) |
| FOR ORTHOPAEDIC & MULTI-SPECIALTY | ) |
| SURGERY, LLC. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT OCOM'S MOTION FOR
## SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW, Defendant Southwest Ambulatory Surgery Center, LLC d/b/a Oklahoma Center for Orthopaedic & Multi-Specialty Surgery, LLC ("OCOM"), by and through its counsel of record, the law firm of Holden & Carr, pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, and hereby respectfully moves this Court to grant summary judgment in its favor. In support of its Motion for Summary Judgment, Defendant OCOM would show the Court as follows:

**BRIEF IN SUPPORT**

**I.   STATEMENT OF MATERIAL FACTS**

For purposes of this Motion only, the following facts are asserted as uncontroverted:

1. OCOM employed Plaintiff Rena Thomas ("Plaintiff" or "Ms. Thomas") in their housekeeping department from approximately January 8, 2006 until August 30, 2013. Exhibit 1, Employee Termination Packet.

2. During Plaintiff's employment with OCOM, she assisted in hiring staff to meet the needs of OCOM's housekeeping department. Exhibit 2, Deposition of Rena Thomas, 48:24-49:6.

3. Plaintiff made a complaint to her supervisor and OCOM management in August, 2012; she followed up with a summary email containing her complaints that (1) Jo Wyer, the Director of Nursing ("DON") used racially derogatory slurs to describe a housekeeping employee when she was referred to as the "big black one" and (2) that the DON's son, Jeremy Wyer, was treated differently because he was the DON's son and he was white. Exhibit 3, Thomas Email, 8-22-12.

1

4.      These claims of discrimination were immediately investigated; OCOM brought in counsel to interview various employees, including Rena Thomas, and make recommendations to remedy any issues, which were implemented. Exhibit 4, Deposition of Mike Kimzey, 9:12-25; 15:5-14.

5.      Ms. Thomas admits she is unaware of any further inappropriate comments made by Jo Wyer after her complaint in August 2012. Exhibit 2, Deposition of Rena Thomas, 75:18-76:1.

6.      In her deposition, when asked about other complaints she made to OCOM HR during her employment, Ms. Thomas stated she complained about a fellow housekeeper, Jennifer Dobbs Phillips, not doing her work sufficiently. Ms. Thomas brought her concerns to HR's attention. Ms. Thomas admitted Ms. Phillips resigned shortly after Ms. Thomas made her complaint to OCOM's HR. Ms. Thomas confirms that those issues were therefore resolved. Exhibit 2, Deposition of Rena Thomas, 53:22-12; 58:16-60:5.

7.      Plaintiff received a merit raise of 2%, effective January 12, 2013. Exhibit 5, Employee Status Change 2013 Merit Raise.

8.      Plaintiff made no further complaints to her supervisor or other management at OCOM following the resolution of the August 2012 complaints and her complaint about Ms. Phillips. Rather, a year later, on August 7, 2013, Ms. Thomas apparently drafted an email to herself that she felt the housekeeping department was being subject to injustice by the elimination of the housekeeping department. In the email, which she sent only to herself, she cited to Jerome Morgan, an African-American housekeeper, and Jennifer, a

Caucasian housekeeper, were subject to a hostile work environment due to the elimination of the department and the option to be hired by the outside vendor franchise. Exhibit 6, Thomas Email, 8-7-13; Exhibit 2, Deposition of Rena Thomas, 83:12-17.

9. Contrary to Plaintiff's assertion that OCOM let Jennifer Hartley stay with OCOM, she did not "stay" as a housekeeper. Rather she was hired by OCOM as a nurse assistant after obtaining her certificate in August 2013; Mike Kimzey does not recall her working while she attended school. Exhibit 4, Deposition of Mike Kimzey, 47:10-50:19.

10. OCOM's housekeeping department was unable to maintain the desired staffing size. Exhibit 2, Deposition of Rena Thomas 126:7-10; Exhibit 3, Deposition of Mike Kimzey, 18:8-16; 34:19-35:2; 36:25-37:11.

11. Due to this inability to maintain staffing levels, OCOM made the business decision to eliminate the internal housekeeping department and contract out for janitorial services. Exhibit 3, Deposition of Mike Kimzey, 18:8-16; 34:19-35:2; 36:25-37:11.

12. At the time of the elimination of the OCOM housekeeping department, Plaintiff admits there were no comments made about her race. Exhibit 2, Deposition of Rena Thomas, 128:23-129:1.

13. At the time of the elimination of the OCOM housekeeping department, there were three Caucasian housekeepers: Jamie Cannon, Cindy Estill, and Terry Bailey. Exhibit 7, OCOM's Responses to Interrogatories, Response No. 12.

14. Rena Thomas was terminated from OCOM on August 30, 2013; she confirmed in deposition testimony that her signature was on the termination

documentation. Exhibit 1, Employee Termination Packet; Exhibit 2, Deposition of Rena Thomas, 44:22-16.

15.  JAN-PRO entered into a contract with OCOM to provide janitorial services for the hospital, effective September 1, 2013. Exhibit 8, JAN-PRO Contract.

16.  After September 2013, all of the individuals providing housekeeping services at OCOM were employed by JAN-PRO. Exhibit 2, Deposition of Rena Thomas, 126:11-17; Exhibit 4, Deposition of Mike Kimzey, 54:4-14. Ms. Thomas admits she was specifically employed by JAN-PRO as of September 1, 2013. Exhibit 2, Deposition of Rena Thomas, 131:21-132:2; Exhibit 8, JAN-PRO Contract.

17.  Plaintiff's benefits changed when she was hired by JAN-PRO. Exhibit 2, Deposition of Rena Thomas, 127:4-128:4.

18.  Rena Thomas was paid by JAN-PRO, not OCOM, after joining JAN-PRO effective September 1, 2013. Exhibit 2, Deposition of Rena Thomas, 42:10-43:4. She received a pay increase while working with JAN-PRO. Exhibit 2, Deposition of Rena Thomas, 141:11-17.

19.  Rena Thomas was terminated from JAN-PRO by Tony Craig on August 14, 2015. Exhibit 2, Deposition of Rena Thomas, 92:2-13. Mr. Craig confirmed in his sworn testimony that he had sole discretion to terminate Plaintiff. Exhibit 9, Deposition of Tony Craig, 16:19-25.

20.  On September 24, 2015, Rena Thomas filed a Charge of Discrimination against only JAN-PRO, alleging race discrimination and retaliation. Exhibit 10, EEOC Notice of Charge.

21. Ms. Thomas's Charge was dismissed on April 8, 2016; in the cover letter accompanying the Dismissal and Notice of Suit Rights, EEOC investigator Michael L. Talton noted that Ms. Thomas failed to provide the EEOC with additional evidence. Exhibit 11, Dismissal and Notice of Right to Sue. A copy of the Dismissal was sent to JAN-PRO. *Id.*

22. Plaintiff filed her Complaint on July 7, 2016 against JAN-PRO and OCOM. Plaintiff's Complaint [Dkt 1].

## II.   ARGUMENTS & AUTHORITIES

### Proposition 1:   Plaintiff Has Failed To Exhaust Her Administrative Remedies Against OCOM

"Exhaustion of administrative remedies is a '**jurisdictional prerequisite**' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (*citing Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980) (emphasis supplied). The Supreme Court of the United States has examined these prerequisites at length:

> Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citations omitted). Accordingly, a person claiming to have suffered an act of discrimination or retaliation under Title VII, must file an EEOC Charge within 300 days of the unlawful act. 42 U.S.C.

§ 2000e-5(e)(1). Once the EEOC has issued a Notice of Right to Sue letter, then the Plaintiff must commence their lawsuit within ninety days of the Notice. 42 U.S.C. § 2000e-5(f)(1). As to Plaintiff's Oklahoma Anti–Discrimination Act ("OADA") discrimination and retaliation claims, the Honorable Timothy D. DeGiusti has held: "All defenses to Title VII claims are equally applicable to claims brought under the OADA. Accordingly, Plaintiff's OADA claims for gender discrimination and retaliation must be dismissed for failure to exhaust administrative remedies as well." *Ayoola v. OG&E Energy Corp.*, No. CIV-13-804-D, 2014 WL 111144, at *2 (W.D. Okla. Jan. 10, 2014) (citing Okla. Stat. tit. 25, § 1350(F)).  As such, the OADA claim must fail for failure to exhaust administrative remedies.

Pursuant to the statutory framework, and as explained by the Supreme Court in *Morgan*, the alleged employer must be put on notice about the EEOC charge. In the matter before the Court, Rena Thomas failed to exhaust her administrative remedies against OCOM. Plaintiff did not name or otherwise identify OCOM as a respondent in the EEOC charge, nor did she serve notice upon OCOM of the EEOC charge. Moreover, even if the Court were to find the EEOC Charge was compliant, which OCOM disputes, the filing of the subject EEOC Charge against OCOM would have been untimely. Plaintiff's last day as an employee of OCOM was August 30, 2013. She had 300 days to file a charge against OCOM, or until June 26, 2014. The EEOC charge was filed over a year later, on September 24, 2015.

As such, the entirety of Plaintiff's Title VII claims are time-barred due to her utter failure to comply with the timely exhaustion requirements. As described above, the

relevant statutes required Plaintiff submit her Charge to the EEOC within 300 days of the specific discrete act of discrimination. Plaintiff's Charge was filed on September 24, 2015. As such, the discrete acts of discrimination could not have occurred more than 300 days before September 24, 2015 – meaning the earliest of the alleged acts had to occur by November 28, 2014. It is clear from Plaintiff's own testimony that she was **terminated** from OCOM on August 30, 2013. Accordingly, all of Plaintiff's Title VII claims are barred, as Plaintiff failed to timely exhaust her administrative remedies as is required by 42 U.S.C. §2000e. As a result, Plaintiff's Title VII claims should be dismissed in their entirety.

### Proposition 2: All of Plaintiff's Claims as to OCOM are Untimely and Time Barred

Similarly, all of Plaintiff's claims are time barred. In addition to the failure of Plaintiff to timely exhaust her required administrative remedies for Title VII claims, Plaintiff's remaining claims under the OADA and 42 U.S.C. §§ 1981 and 1983 are simply time barred. The statute of limitations for discrimination or hostile work environment claims brought pursuant to 42 U.S.C. §§ 1981(a) or 1983 in Oklahoma is the same two-year statute applicable to claims for injury to personal rights. *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1188 (10th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Nov. 26, 2002) (§ 1981 claims statute of limitations); *Nunley v. Pioneer Pleasant Vale School Dist. No. 56*, 190 F.Supp.2d 1263 (W.D.Okla.2002) (§1983 claims statute of limitations); *see also* 12 O.S. § 95(A)(3). Plaintiff also had a 180 day deadline to file a charge pursuant to the OADA. 25 O.S. §1350(C).

Plaintiff's employment with OCOM ended on August 30, 2013. Plaintiff had 180 days to file a complaint with the OADA or EEOC to preserve her complaints under the OADA; that did not occur. As her § 1981 and § 1983 claims related to her employment, they became time-barred two years after her termination. Two years after her termination was August 30, 2015. The instant suit was filed on July 7, 2016, past the deadline to timely file a claim pursuant to the OADA, § 1981, or even § 1983. As Plaintiff's Title VII claim is also time barred as set forth in Proposition I, *supra*, all of plaintiff's claims are time-barred and the court should dismiss the claims in their entirety.

**Proposition 3: The Undisputed Facts Establish That Defendants Do Not Constitute a Joint Enterprise Rendering OCOM Entitled to Summary Judgment on this Issue**

Plaintiff's Title VII claims require her to establish her employer for purposes of the *prima facie* case. If the plaintiff is unable to establish a defendant was her employer, her Title VII claims must fail. *See, Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). "Factfinders must decide whether a defendant is an employer for purposes of Title VII when doubts exist as to (1) whether a plaintiff is an employee or an independent contractor, or, alternatively, (2) which one(s) of multiple individuals or entities is (are) the plaintiff's employer." *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014). Courts in this circuit utilize one of three tests to determine whether a defendant is an employer for purposes of an employment discrimination claim: (1) the hybrid test (2) the single employer test; or (3) the joint employer test. *Id.* at 1226. The Tenth Circuit previously rejected the hybrid test, which is used to distinguish an employee from an independent contractor, in the context of a joint employment claim. *See Bristol v. Bd. of*

*County Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002)). "In our 2002 en banc decision in *Bristol v. Board of County of Commissioners,* . . . we clarified that the joint employer test, *not the hybrid test,* is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer." *Knitter,* 758 F.3d at 1226 (citing *Bristol v,* 312 F.3d at 1218 (10th Cir. 2002)) (emphasis supplied).

The joint employer test inquires whether two entities "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* "The key issue in 'joint employer' cases is whether the second employer . . . exercised substantial control over significant aspects of the compensation, terms, conditions, or privileges of the 'borrowed' employee's employment." *Burdette v. Abrasive Eng'g & Tech., Inc.,* 989 F. Supp. 1107, 111 (D. Kan. 1997). The Tenth Circuit set out the factors to consider in determining substantial control over the terms and conditions of an employment relationship to implicate joint employment:

> Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances. Additional factors courts consider for determining control under the joint employee test include the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; ... day to day supervision of employees, including employee discipline; and ... control of employee records, including payroll, insurance, taxes and the like.

758 F.3d at 1226 (internal quotations omitted). The *Knitter* Court determined found no joint employment relationship existed since the property management company **did not** (ii) "have the authority to terminate Ms. Knitter's employment; (ii) … did not pay

-9-

Ms. Knitter directly; and (iii) … did not have the authority to supervise and discipline Ms. Knitter beyond the confines of a vendor-client relationship." *Knitter*, 758 F.3d at 1228.

Rena Thomas's allegations against OCOM fail for these same reasons. Thomas has not and cannot set forth facts to establish (1) OCOM had the right to terminate Thomas' employment relationship with JAN-PRO; (2) OCOM had control over Thomas' pay, benefits, or employment records with JAN-PRO; or (3) OCOM had the authority to supervise Thomas's daily work or discipline her beyond the typical vendor-client relationship. As a result, Plaintiff cannot allege the necessary employment relationship and therefore she fails to state claims for violations of Title VII, § 1981, or § 1983.

First and foremost, Rena Thomas admitted she was terminated from OCOM in August 30, 2013. She recognized she was not an employee of OCOM, but rather an employee of JAN-PRO starting September 1, 2013. JAN-PRO's owner, Tony Craig, clearly and unequivocally admits he had sole discretion in the decision to terminate Rena Thomas from JAN-PRO:

While employed by JAN-PRO, Ms. Thomas received her pay and benefits directly from JAN-PRO. OCOM did not pay Ms. Thomas, as she was not their employee after she was terminated (along with the remaining OCOM housekeeping department) on August 30, 2013. Thereafter, OCOM was invoiced by JAN-PRO for the services provided by the JAN-PRO employees. Finally, there is no evidence that OCOM directed Ms. Thomas' daily act ivies outside of the normal vendor-client relationship. It was JAN-PRO's duty to hire their own staff to fulfill the contract for janitorial services between OCOM and JAN-PRO.

Taking together the "essential terms and conditions of employment," there can be no finding other than OCOM exerted *insufficient control* to be Thomas's joint manager. *See Knitter,* 758 F.3d at 1231; *Bristol*, 312 F.3d at 1218-19; *Butterbaugh v. Chertoff,* 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007*).* As noted by the Tenth Circuit in *Knitter*, it is expected that some control might exist over a vendor, such as "supervising limited aspects of their work, providing them with instruction on particular tasks, and furnishing some supplies when necessary." *See Knitter,* 758 F.3d at 1231. However, this limited control is not a sufficient basis for a reasonable jury to find that, taking all the factors together, OCOM was Rena Thomas's joint employer for the relevant time periods. *See id.* Accordingly, in alignment with the holding in *Knitter*, the Court should grant summary segment as to OCOM. This Motion for Summary Judgment should be granted because to the extent Ms. Thomas faced discrimination or harassment at her job, which is denied, Title VII, § 1981, or § 1983 does not furnish her with a remedy against OCOM because it was not an "employer" within the meaning of the statutes within the relevant limitations period. *See Knitter*, 758 F.3d at 1231. If Ms. Thomas experienced any harassment or discrimination in violation of Title VII, § 1981, or § 1983, of which are expressly denied by OCOM, prior to her termination by OCOM on August 30, 2013, those claims are specifically time-barred, as set out in Propositions I-II, *supra.*

>**Proposition 4: Plaintiff's Claims Fail Even If Plaintiff Timely Exhausted Required Administrative Remedies and Filed Claims against OCOM**

>**A. PLAINTIFF CANNOT ESTABLISH A TITLE VII AND/OR § 1981 CLAIM AGAINST OCOM**

For Plaintiff to prove a Title VII racial discrimination claim, the plaintiff must prove the following elements to make out a prima facie case: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Fisher v. Vassar College*, 114 F.3d 1332, 1344 (2d Cir.1997)." The burden shifting paradigm under *McDonnell Douglas* applies to both direct and indirect Title VII cases that alleged an inference that, but for plaintiff's race, the employment decision would have been different. *Wirtz v. Kansas Farm Bureau Servs., Inc*., 311 F. Supp. 2d 1197 (D. Kan. 2004)

Title VII does not set forth "a general civility code for the American workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Supreme Court has admittedly "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788,(1998) "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc*., 474 F.3d 675, 680 (10th Cir. 2007). Hostile work environment claims under § 1981 are analyzed in the same manner as a similar Title VII claim. *Ross v. Kansas City Power & Light Co*., 293 F.3d 1041, 1050 (8th Cir.2002).

In the instant matter, Plaintiff cites to a complaint she made in 2012 about perceived discriminatory behavior. This complaint included a single allegation of an employee referring to a member of the housekeeping staff as "the big black one" in early 2012 and

the general feeling that other employees were permitted to get away with doing little work. These claims were promptly investigated by the OCOM management and an outside attorney. The investigation included meeting with Rena Thomas. Following the investigation, OCOM found items to work on to remedy any issues, and the matter was concluded. Plaintiff did not advise her supervisor, or even the management, if she felt that the alleged discriminatory practices continued. Instead, she sent an email *to herself*, just days after the announcement of the JANPRO contract, that addressed "another blow" that in that she, Jerome Morgan (African-American) ,and Jennifer (Caucasian) were being offered the opportunity to go to work for an outside vendor due to the elimination of the housekeeping department. In that email – which was not made known to OCOM until this instant lawsuit – Ms. Thomas states "But I love working here…" Exhibit 6, Thomas Email, 8-7-13. Ms. Thomas admits she did not sent the message to any one else, nor otherwise address the matter. However, even if the email had been sent to her boss or other mangers at OCOM, which it was not, the claims made within apply to both African-American <u>and</u> Caucasian employees.

    Plaintiff's complaints made in August 2012 were promptly investigated and appropriately remedied. Plaintiff being upset about the elimination of the entire OCOM housekeeping department in 2013 and subsequent termination from JANPRO, an outside vendor for OCOM, is not a valid claim of racial discrimination, and therefore her claims fail and summary judgment in favor of the Defendant is warranted.

## B.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CLAIM OF RETALIATION AGAINST OCOM

In order to establish a *prima facie* case of retaliation, Plaintiff must prove (1) that she engaged in protected activity; (2) that the employer subsequently took an adverse employment action; and (3) that there is a causal nexus between the protected activity and the adverse employment action. *Mattioda v. White,* 323 F.3d 1288, 1293 (10th Cir. 2003); *Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1234 (10th Cir. 2000).* Plaintiff cannot establish any causal nexus whatsoever between her complaint made in August of 2012 and the elimination of the entire housekeeping staff (which included Caucasian employees) on August 30, 2013.

The entire housekeeping department was eliminated due to OCOM's inability to maintain adequate staffing levels. Plaintiff herself admits the difficulty in maintaining staff while an employee at OCOM. JANPRO was specifically contracted to provide consistent cleaning services, since they were able to draw from a larger pool. Plaintiff's claim that the housekeeping department was terminated because it was made up of only African-American employees is incorrect and misleading. The entire OCOM housekeeping department was eliminated – which included three Caucasian employees: Jamie Cannon, Cindy Estill and Terry Bailey. It is undisputed that the complaints relied on by Plaintiff were made well over a year before she was terminated. And there is no evidence that Plaintiff's 2012 complaints are connected to her 2013 termination. In fact, intervening events demonstrate that Plaintiff was rewarded with a merit increase in her pay, effective January 13, 2013. Accordingly, her retaliation claim must fail as a matter of law.

### C. A CLAIM UNDER § 1983 CANNOT EXIST AGAINST OCOM BECAUSE IT IS NOT A PUBLIC ACTOR OR OTHERWISE ACTING UNDER THE COLOR OF LAW

Finally, Plaintiff's cause of action under § 1983 does not apply to the current matter. To maintain an action under 42 U.S.C. § 1983, a plaintiff must establish the defendant's conduct deprived her of a federal constitutional or statutory right and the alleged deprivation was committed under *color of state law*. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). Such a claim fails. OCOM is neither a governmental entity, nor has there has been any allegation made by Plaintiff that OCOM is a public entity or acted under color of law.

### III. <u>CONCLUSION</u>

Plaintiff's various claims against OCOM are entitled to summary judgment because they are untimely. Plaintiff has failed to exhaust her administrative remedies against OCOM as to any of the Title VII claims. Furthermore, all of the allegations made by Plaintiff against OCOM are time-barred. The claims cannot be subject to any tolling, as the Plaintiff cannot establish a joint employer relationship between JAN-PRO and OCOM. As such, any claims sounding in Title VII, § 1981, or § 1983 fail against OCOM.

WHEREFORE, premises considered, Defendant OCOM respectfully requests that the Court grant its Motion for Summary Judgment as to all of Rena Thomas's claims along with any and all further remedy the Court deems equitable and fair.

Respectfully submitted,

**HOLDEN & CARR**

*s/ Jessica L. Craft*
Michael L. Carr, OBA #17805
Jessica L. Craft, OBA #31126
15 East 5th Street, Suite 3900
Tulsa, OK 74103
(918) 295-8888; (918) 295-8889 fax
MikeCarr@HoldenLitigation.com
JessicaCraft@HoldenLitigation.com
***Attorneys for Defendant Southwest Ambulatory Surgery Center, LLC d/b/a Oklahoma Center for Orthopaedic & Multi-Specialty Surgery, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lou Keel, OBA #4906
loukeel@yahoo.com

T. Matthew Smith, OBA #20848
matt@hlfokc.com

Joshua W. Solberg, OBA #22308
Josh.Solberg@mcafeetaft.com

*s/ Jessica L. Craft*
Jessica L. Craft

94.169